# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SAMUEL RIVERA,
      Plaintiff,

        v.

COMMISSIONER OF THE
DEPARTMENT OF CORRECTIONS, et
al.,
      Defendants.

No. 3:20-cv-1333 (SRU)

## <u>INITIAL REVIEW ORDER</u>

Samuel Rivera, currently incarcerated at Osborn Correctional Institution ("Osborn") in

Somers, Connecticut and proceeding *pro se*, filed the instant complaint under 42 U.S.C. § 1983

against twenty defendants.  In particular, he sues Nurse A. Walters, Dr. Kevin, Nurse Carol,

seven Jane Doe nurses, one John Doe nurse, John Doe Grievance Coordinator, and John Doe

Warden, all of whom are employed at MacDougall-Walker Correctional Institution

("MacDougall-Walker").  Rivera also names as defendants the following individuals employed

at Garner Correctional Institution ("Garner"):  Nurse E. Post, one John Doe doctor, and three

John Doe nurses/other medical personnel.  Lastly, he sues one John Doe nurse at Osborn and the

Commissioner of the Department of Corrections ("DOC").

In his complaint, Rivera principally alleges that the defendants were deliberately

indifferent to his back pain and failed to comply with medical orders issued in a state habeas

case.  All defendants—except for John Doe Grievance Coordinator, who is sued in his individual

and official capacities—are sued in only their individual capacities.  Rivera seeks damages as

well as injunctive relief.

## I.      Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any

portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief

may be granted, or that seeks monetary relief from a defendant who is immune from such relief.

*See* 28 U.S.C. § 1915A(b).  Although detailed allegations are not required, the complaint must

include enough facts to afford the defendants fair notice of the claims and the grounds upon

which they are based.  *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007).  In addition,

the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Id*. at

570.  Conclusory allegations will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally

and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723

F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474

(2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing

special rules of solicitude afforded to *pro se* litigants).

## II.      Allegations[1]

On December 2, 2014, Rivera submitted a medical request regarding his lower back pain.

*See* Compl., Doc. No. 1, at ¶ 24.  He was seen in response to the request but was "never attended

to."  *Id.*  On December 14, 2014, Rivera submitted another medical request complaining of his

back pain.  *Id.* at ¶ 25.  Rivera was seen on December 26, 2014, given a three-day supply of

Advil, and referred to a doctor for examination within the following two weeks.  *See id.*

---

[1] The facts are drawn from the complaint, and I assume them to be true and draw all reasonable inferences
in Rivera's favor.  *See Ashcroft*, 556 U.S. at 678–79.

On January 19, 2015, Rivera submitted a medical request noting once again that he suffered from back pain and elaborating that the pain was the result of a motor vehicle accident. *Id.* at ¶ 26.  He added that he had been waiting for two months for his prescriptions for 600 mg of Neurontin and 800 mg of Motrin.  *Id.*  Ten days later, on January 29, 2015, Rivera submitted another medical request discussing his back pain.  *Id.* at ¶ 27.  He received a reply on February 4, 2015, which indicated that he had an upcoming doctor's appointment.  *Id.*

About four months later, on April 28, 2015, Rivera filed a medical request stating that he had been at MacDougall-Walker for six months and yet was still waiting to be treated for his back pain and epilepsy.  *Id.* at ¶ 28.  He also explained to a nurse the medication he was taking. *Id.*  In response, Rivera was told that he did not show for sick call; Rivera, however, denies being called.  *Id.*

On May 11, 2015, Rivera submitted another medical request that reiterated his lower back pain, listed his prescriptions, and emphasized that nothing had yet been done to ameliorate his condition.  *See id.* at ¶ 29.  Rivera was thereafter advised that a doctor's appointment had been scheduled.  *See id.*  Rivera renewed his request for medical attention on August 26, 2015, raising concerns about his back pain and inquiring why he had not yet seen a doctor.  *See id.* at ¶ 30.  On September 4, 2015, Nurse Walters responded that Rivera was on the doctor sick call list. *Id.*

On April 29, 2016, Rivera filed a medical request flagging that his back pain had worsened and that he occasionally needed assistance from other inmates.  *See id.* at ¶ 31.  Rivera was not seen but received a response that same day, which stated that Dr. Kevin reviewed Rivera's chart and concluded that Rivera did not need a cane at this time.  *See id.*  On May 2, 2016, Rivera submitted another request to Dr. Kevin, which explained that his health was

deteriorating due to his debilitating condition.  *See id.* at ¶ 32.  Almost three weeks later, on May 20, 2020, Rivera received a response that stated that he had refused sick call, which Rivera maintains is inaccurate.  *Id.*

On June 12, 2016, Rivera requested a renewal of his prescription for Naproxen.  *Id.* at ¶ 33.  The response to his request, which was provided on June 28, 2016, indicated that the medication was renewed by Nurse Walters.  *Id.*  As of June 30, 2016, he had yet to receive his Naproxen medication and submitted a request to that effect that day.  *Id.* at ¶ 34.  Nurse Carol responded to his request for Naproxen on July 3, 2016, and Rivera's medications were refilled on July 12 and 13, 2016.  *See id.*  A follow-up appointment was also scheduled for October 28, 2016.  *See id.*

In addition, on June 26, 2016, Rivera had a medical emergency; when he arrived at the medical unit, his chart could not be located until a few hours later.  *Id.* at ¶ 34.   By the time he was finally seen, he was informed that the doctor had left and that he would be seen the following Monday.  *Id.*  Rivera, however, was still not seen as of the following Thursday.  *Id.*

On September 12, 2016, Rivera visited UConn to receive a cortisone injection in his lower back.  *Id.* at ¶ 36.  While there, he raised several health issues with his treating medical staff, including, among other things, his nausea, rapid weight loss, muscle weakness, and persistent lethargy.  *Id.*  Because Rivera had described symptoms of a blood disorder that might be leukemia, the staff advised him to get a blood test immediately.  *See id*.  The following day, Rivera submitted a request detailing his trip to UConn, requesting a blood test, and also requesting an examination of his moles.  *See id.*  Nurse Walters responded to the request on October 4, 2016.  *Id.*

On November 14, 2016, Rivera filed a health care grievance, requesting a review of his treatment and other medical issues, which was not answered. *See id.* at ¶ 37. Nearly three months later, on February 20, 2017, Rivera submitted a medical request explaining that the relief from the cortisone shot had waned and that he was experiencing constant pain and discomfort. *Id.* at ¶ 38. He added that he had difficulty bending from the waist up and had additional lumbar disc bulges on his back. *Id.* The request was replied to on February 28, 2017, and the reply stated that Rivera was a no-show at sick call—a charge that Rivera denies. *Id.* In addition, although Rivera was advised during a prior medical visit that he would receive a back brace, he never received one. *Id.*

On March 5, 2017, Rivera submitted another medical request inquiring about his cortisone shot. *Id.* at ¶ 39. In his request, Rivera wrote that he was advised that he would receive a shot every 90 to 120 days but that he had not received a shot in six months. *Id.* He also noted that the relief from his last shot was wearing off. *Id.* Rivera was finally evaluated and given a cortisone shot at UConn in May 2017. *Id.* at ¶ 40.

On October 31, 2017, Rivera submitted a grievance asserting that the medical staff were not complying with various orders issued in a state habeas case regarding his medical care. *See id.* at ¶ 41. On August 29, 2018, Rivera filed a medical request that contended again that the staff were failing to comply with the state court's order. *See id.* at ¶ 42. The request was replied to on September 19, 2018. *Id.*

On October 5, 2018, Rivera submitted a request for a cortisone shot, noting that over eight months had passed since the last shot. *Id.* at ¶ 43. A response was provided on October 20, 2018, and Rivera was referred to a doctor. *Id.* In 2019, when Rivera was transferred to Osborn, the intake nurse informed him that cortisone shots are no longer supplied. *Id.* at ¶ 44. In June

2020, however, the same nurse advised him that he was on the list to travel to UConn for a cortisone shot.  *Id.*  Rivera had not received a cortisone shot as of July 8, 2020, the day he drafted the complaint.  *Id.*

### III.   Discussion

####  A.   <u>Statute of Limitations</u>

As a preliminary matter, although Rivera brings claims arising out of incidents dating back to 2014, and although the limitations period for filing a section 1983 action in Connecticut is three years, *Thompson v. Rovella*, 734 F. App'x 787, 788–89 (2d Cir. 2018), I cannot conclude at this stage that those claims are time-barred.

 Section 1983 claims accrue when the plaintiff knew "or ha[d] reason to know of the injury which is the basis of his action."  *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (citation omitted).  Prisoner complaints are considered filed on the day the prisoner gives the complaint to prison officials for delivery to the court.  *See Sides v. Paolano*, 782 F. App'x 49, 50 (2d Cir. 2019).  Although Rivera signed the complaint on July 9, 2020, his motion to proceed *in forma pauperis*, which was submitted together with the complaint, is signed August 7, 2020. Accordingly, I presume the complaint was given to prison officials on August 7, 2020; all claims that accrued before August 7, 2017 may therefore be time-barred.

When construing the allegations liberally and drawing all reasonable inferences in Rivera's favor, however, I conclude that continuing violation doctrine—which provides an "exception to the normal knew-or-should-have-known accrual date," *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (citation omitted)—plausibly applies to Rivera's claims.  The continuing violation doctrine "applies to claims composed of a series of separate acts that collectively constitute one unlawful . . .  practice."  *See Lucente v. Cty. of Suffolk*, 980 F.3d 284,

309 (2d Cir. 2020) (internal citations and quotation marks omitted).  The continuing violation

doctrine therefore does not apply to "discrete unlawful acts," even when those discrete acts are

part of "serial violations," and instead applies "to claims that by their nature accrue only after the

plaintiff has been subjected to some threshold amount of mistreatment."  *See id*. (citing *Nat'l Rr.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)).  If the continuing violation doctrine

applies, the limitations period starts to run when the defendant has "engaged in enough activity

to make out an actionable . . . claim."  *See id*. (citing *Morgan*, 536 U.S. at 117).  Moreover, a

claim will only be considered timely under the continuing violation doctrine if the plaintiff

pleads "some non-time barred acts" contributing to the violation.  *Id.* (citation omitted).

Although the continuing violation doctrine is invoked most commonly in connection with

Title VII claims, the Second Circuit has extended the doctrine to various constitutional claims,

including Eighth Amendment deliberate indifference claims.  *See id.* (collecting cases).  To

assert a continuing violation for statute of limitations purposes with respect to a deliberate

indifference claim in particular, a plaintiff must "allege both the existence of an ongoing policy

of deliberate indifference to his or her serious medical needs and some non-time-barred acts

taken in the furtherance of that policy."  *Shomo v. City of New York,* 579 F.3d 176, 182 (2d Cir.

2009) (alterations and citations omitted).

Applying the foregoing principles, I conclude that Rivera has sufficiently alleged the

existence of an ongoing policy depriving him of adequate medical treatment.  As discussed more

fully below, the complaint details a pattern of DOC staff belatedly providing, or failing to

provide, recommended medication to treat Rivera's back pain.  *See id.* (concluding that the

district court properly held that an ongoing policy existed for purposes of the continuing

violation doctrine when the complaint suggested a pattern where staff refused to provide

recommended treatments).  Further, the complaint articulates factual allegations illustrating

deliberate indifference within the three-year time period.  Specifically, the complaint indicates

that Rivera had not received a cortisone shot for well over two years as of July 8, 2020

notwithstanding multiple requests.  Accordingly, the continuing violation doctrine cognizably

applies to Rivera's deliberate indifference claims and I will not dismiss as untimely his claims

arising out of events that took place before August 7, 2017.

### B. Eighth Amendment

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical

needs.  *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).

To state a deliberate indifference claim, Rivera must allege both that his medical need was

serious and that the defendants acted with a sufficiently culpable state of mind.  *See Smith v.*

*Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  The standard embodies both an objective and

subjective element.  *See id*. at 183.  To meet the objective element, the alleged deprivation of

adequate medical care must be "sufficiently serious."  *See Hathaway v. Coughlin*, 99 F.3d 550,

553 (2d Cir. 1996) (citation omitted).  That inquiry "requires the court to examine how the

offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely

cause the prisoner."  *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).

Where the defendants allegedly failed to provide any treatment for a prisoner's medical

condition, the focus of the court's inquiry is whether the medical condition is sufficiently serious.

*Id*. at 280.  The Second Circuit has delineated several factors that are "highly relevant" to that

question, including "an injury that a reasonable doctor or patient would find important and

worthy of comment or treatment; the presence of a medical condition that significantly affects an

individual's daily activities; or the existence of chronic and substantial pain."  *Chance v.*

*Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation omitted).  In addition, a sufficiently

serious medical condition exists when, if left untreated or neglected for a long period of time, it

will "result in further significant injury or the unnecessary and wanton infliction of pain."

*Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000) (citation omitted).

Where, on the other hand, the defendants allegedly provided medical treatment that was

inadequate, the objective inquiry is narrower.  *See Salahuddin*, 467 F.3d at 280.  For instance, if

the prisoner is receiving ongoing medical care and there was an "unreasonable delay or

interruption in that treatment," the inquiry focuses on "the challenged delay or interruption in

treatment rather than the prisoner's underlying medical condition alone."  *Id.* (citation omitted).

To meet the subjective element, the defendants must have been "subjectively reckless"—

that is, they must have been aware that the prisoner faced a substantial risk to his or her health or

safety and disregarded that risk.  *See Farmer*, 511 U.S. at 837; *Spavone*, 719 F.3d at 138.  The

defendants "need only be aware of the risk of harm, not intend harm," and "awareness may be

proven 'from the very fact that the risk was obvious.'"  *Spavone*, 719 F.3d at 138 (quoting

*Farmer*, 511 U.S. at 842).  Such recklessness entails more than mere negligence, *Salahuddin*,

467 F.3d at 279–80, and "an official's failure to alleviate a significant risk that he should have

perceived but did not" does not constitute deliberate indifference, *see Farmer*, 511 U.S. at 838.

A disagreement over a choice of treatment provided also does not establish deliberate

indifference.  *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015); *Hill v. Curcione*, 657 F.3d

116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to

choose his medical treatment as long as he receives adequate treatment.").

In his complaint, Rivera alleges that he has suffered from back pain since at least

December 2014.  The complaint suggests that DOC staff failed to provide Rivera with a back

brace, failed to administer cortisone shots every 90 to 120 as medically recommended and, further, failed to provide his Neurontin, Motrin, and Naproxen medications in a timely manner. Moreover, according to his complaint, Rivera was not evaluated following multiple complaints regarding his back pain.  His pain had additionally worsened during several periods of alleged medical neglect, which rendered Rivera unable to bend without difficulty at one point and in need of assistance from other prisoners at another.

Considering those allegations, and drawing all reasonable inferences in favor of Rivera and construing his complaint liberally, Rivera has pled the existence of a sufficiently serious deprivation of medical care.  *See Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005) ("[A] deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians.").  I therefore conclude that Rivera has adequately established the objective element of the deliberate indifference test.

With respect to the subjective element, the complaint plausibly attributes culpable intent to Dr. Kevin and Nurse Walters.  In particular, the complaint alleges that Rivera complained of worsening and severe back pain on April 29, 2016 and that Dr. Kevin, without seeing Rivera, merely advised him that he did not need a cane in response.  The complaint further alleges that, on May 2, 2016, Rivera submitted another request to Dr. Kevin explaining that his health was deteriorating due to his back pain.  According to the complaint, Rivera was again not seen and only received a reply that stated that he had refused sick call, which he denies.  In my view, those allegations raise a reasonable inference that Dr. Kevin was aware of a substantial risk that his failure to treat Rivera's back pain would cause Rivera serious harm and thus acted with deliberate indifference.

Further, the complaint alleges that Nurse Walters replied to Rivera's medical request dated August 26, 2015, which complained of lower back pain and questioned why he had not yet seen a doctor. Although Nurse Walters noted in the response that Rivera was placed on sick call, the complaint indicates that Rivera was not given any medical attention until eight months later, when Dr. Kevin opined that Rivera did not need a cane. In light of those allegations, the complaint reasonably suggests that Nurse Walters was aware that Rivera faced a substantial risk to his health and disregarded that risk.

The allegations concerning nurse Doe at Osborn, however, are insufficient. Rivera only alleges that, when he arrived at Osborn in 2019, nurse Doe told him that cortisone shots were no longer provided but that, in June 2020, she informed him that he was scheduled to go to UConn for a cortisone shot. Even when drawing all reasonable inferences in his favor, that allegation does not plausibly suggest deliberate indifference, principally because it does not imply that nurse Doe was aware of Rivera's back pain or the severity thereof.

Rivera's allegations against the nurse he spoke with on April 28, 2015 likewise fall short. The complaint merely asserts that Rivera "explained to the nurse the medication he was taking," from which I cannot reasonably infer that the nurse knew that Rivera was exposed to a substantial health risk. Any claims propounded against Nurse Carol are deficient for that same reason; the complaint only provides that Nurse Carol responded to Rivera's request for Naproxen refills on July 3, 2016. Moreover, the Naproxen medications were allegedly refilled shortly thereafter, on July 12 and 13, 2016, which suggests that Nurse Carol did not disregard any risk that might have come to light from Rivera's request.

Finally, the complaint does not set forth any specific allegations concerning the remaining defendants. Although Rivera alleges that he submitted multiple medical requests

complaining of his back pain, the complaint, for the most part, does not specify who received or responded to those requests. Accordingly, I cannot determine based on the complaint whether Rivera can sufficiently satisfy the subjective component of the deliberate indifference test for those defendants.

For the foregoing reasons, all deliberate indifference claims, except those brought against Dr. Kevin and Nurse Walters, are **dismissed without prejudice**.[2]

C.      Enforcement of State Court Order

Rivera further alleges that the DOC staff failed to comply with an order issued in state court regarding Rivera's medical care. Rivera, however, must seek enforcement of state court orders in state court. *See Coleman v. Ducate*, 2013 WL 12205506, at *4 (D. Conn. Oct. 11, 2013); *see also Beudoin v. Michigan Racing Inc.*, 30 F. App'x 575, 576 (6th Cir. 2002) ("appropriate recourse . . . for alleged violation of the state court's order, was to advise the state court of the alleged violations and to pursue the matter in the [state] courts"); *LeBlanc v. Rhode Island*, 2011 WL 7099502, at *9 (D.R.I. Dec. 21, 2011), *report and recommendation adopted*, 2012 WL 244383 (D.R.I. Jan. 25, 2012) (dismissing a plaintiff's claim for non-compliance with state court orders regarding medical care because "it is not the function of this Court to enforce state court orders"); *Sameer v. Khera*, 2018 WL 4039964, at *1 (E.D. Cal. Aug. 22, 2018) ("To the extent that plaintiff is now asserting her claims are based on defendant Khera's violations of state court orders, she must seek enforcement from the court that issued the order, as this court generally does not have jurisdiction to enforce orders made by another court or to compel that

---

[2] I note that, should Rivera seek to replead his Eighth Amendment claims against any supervisory defendants, such as John Doe Grievance Coordinator, John Doe Warden, or the Commissioner of Corrections, he must plead that they "violated the Eighth Amendment by [their] own conduct, not by reason of [their] supervision of others who committed the violation." *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020). Accordingly, Rivera must set forth factual allegations indicating that those defendants themselves "personally knew of and disregarded an excessive risk" to his health or safety. *Id.*

court to take any action.").  Accordingly, Rivera's claim for enforcement of the state court order is **dismissed without prejudice** to refiling in state court.

## IV.   Motion for Appointment of Counsel

Rivera also moves for the appointment of counsel.  *See* Doc. No. 2.  The Second Circuit requires a movant seeking counsel to satisfy "the threshold requirement that the [case] have 'some likelihood of merit.'"  *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (citing *Cooper v. A. Sergenti Co.*, 877 F.2d 170, 172–74 (2d Cir. 1989)).  The movant must also demonstrate that he or she is unable to obtain counsel on his or her own.  *Saviano v. Local 32B-32J*, 75 F. App'x 58, 59 (2d Cir. 2003) (quoting *Cooper*, 877 F.2d at 173).

In this case, it difficult to determine the likely merit of Rivera's claims without a response to Rivera's complaint.  For that reason, and because Rivera does not describe any efforts he took to locate other counsel, the motion is **denied without prejudice.**

## V.   Conclusion

For the foregoing reasons, Rivera's claim seeking enforcement of the state court order is **dismissed without prejudice** to refiling in state court under 28 U.S.C. § 1915A(b)(1).

The deliberate indifference claims against Nurse Carol; all Jane Doe and John Doe nurses, doctors, and other medical personnel; John Doe Grievance Coordinator; John Doe Warden; Nurse E. Post; and the DOC Commissioner are also **dismissed without prejudice** under 28 U.S.C. § 1915A(b)(1).  I will afford Rivera an opportunity to file an amended complaint to assert an Eighth Amendment claim for deliberate indifference claim against the foregoing defendants.  The amended complaint shall be filed within forty-five (45) days from the date of this order and shall describe how the aforementioned defendants were aware that Rivera faced a substantial risk to his health and disregarded that risk.  Failure to do so may result in the

dismissal of this case without further notice from the court.  Rivera shall also use the Prisoner

Efiling Program to file his amended complaint.  In his amended complaint, Rivera shall set forth

all claims—including the claims that are proceeding—and all factual allegations underlying

those claims.

The case will proceed on the deliberate indifference claim against Nurse A. Walters and

Dr. Kevin in their individual capacities.

The Court enters the following orders:

(1)    **The Clerk shall** verify the current work addresses for defendant Walters and Dr.

Kevin with the Department of Correction Office of Legal Affairs, mail a waiver of service of

process request packet to them at the address provided within **twenty-one (21) days** of this

Order, and report to the court on the status of the waiver requests on the thirty-fifth day after

mailing.  If a defendant fails to return the waiver request, the Clerk shall make arrangements for

in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity

and the defendant shall be required to pay the costs of such service in accordance with Federal

Rule of Civil Procedure 4(d).

(2)    T**he Clerk shall** send Rivera a copy of this Order.

(3)    **The Clerk shall** send a courtesy copy of the Complaint and this Order to the

Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)    The defendants shall file their response to the complaint, either an answer or

motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose

to file an answer, they shall admit or deny the allegations and respond to the cognizable claim

recited above.  They also may include all additional defenses permitted by the Federal Rules.

(5)    Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

      (6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

      (7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

      (8)     If Rivera changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Rivera must give notice of a new address even if he is incarcerated. Rivera should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Rivera has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Rivera should also notify the defendants or the attorney for the defendants of his new address.

      (9)     Rivera shall utilize the Prisoner Efiling Program when filing documents with the court.  Rivera is advised that the Program may be used only to file documents with the court.  As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

      (10)    The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Rivera.

      So ordered.

Dated at Bridgeport, Connecticut, this 27th day of January 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge